---

IN THE MATTER OF THE APPLICATION OF THE EAST RIVER BRIDGE AND CONEY ISLAND STEAM TRANSIT COMPANY.

*Elevated railroad — when the report of the commissioners in favor of its construc tion will not be approved by the General Term — 1875, chap. 606.*

A report of commissioners appointed under chapter 606 of 1875, determining that an elevated railroad ought to be constructed and operated over and upon certain streets in the city of Brooklyn named by them, will not be confirmed by the General Term until some provision has been made whereby the owners of lots and buildings abutting upon the proposed route, whether they own the fee of the street in front of their premises or not, shall be compensated for the damages they may sustain by reason of the construction and operation of the railroad.

APPLICATION to confirm the report of commissioners, heretofore appointed under chapter 606 of 1875, determining that an elevated railroad ought to be constructed and operated over and upon certain streets in the city of Brooklyn named by them.

*David Barnett*, for the company.

*N. H. Clement*, for property owners, opposed.

BARNARD, P. J.:

The report should not be confirmed. The proposed elevated road passes through many streets in the city of Brooklyn of various widths. It crosses many others. It must be assumed that in many cases the abutting owner does not own the fee of the street itself. Many owners are bounded by the side of the street to be taken, and others own the fee of the street subject to the public easement upon it as a street. The streets are in many cases completely built

up. The proposed route passes many places of business and many dwellings. It must also be assumed that in some cases large damages are to be suffered by abutting owners.

The act under which the road is to be built, makes no provision for compensation for the injury to the building and premises fronting on the streets. The evidence in this case discloses many persons who believe their property will be ruined by the road. The right to their damages is questioned. If they do not own the fee of the street, their property rights are said not to be taken or affected. If they do own to the center of the street, can they get more than the difference between a street with and without a railroad upon it? If the fee is owned by another than the abutting owner, his rights are merely nominal, and still that may be all which is to be paid for the disturbance of the owner of the premises bounded upon the street.

While these questions are unsettled, I am unalterably opposed to the confirmation of this report.

No magnitude of the public benefit to result from the building of this road will compensate for the injustice to be done by a partial destruction in value of the property of a single owner without compensation. What this compensation is to be, will be determined after the legislature provides a scheme of compensation which shall embrace the injury by a commission or by a jury. The amount awarded should first be paid to the owner as is required in the case of a railroad constructed under the general law. There should be no taking first and payment afterward, as each owner shall be able to force an assessment against the opposition of the railroad. Without therefore examining the question whether the railroad proposed is really a rapid transit road, or is a mere incident to carry Coney Island travel, the motion for confirmation should be denied.

Gilbert, J. :

The Constitution of the State requires, as a condition precedent to the construction of a street railroad, that the consent of the owners of one-half in value of the property bounded on that portion of the street upon which it is proposed to construct such railroad shall be first obtained, or in case the consent of such property owners cannot be obtained, then the determination of commissioners appointed by

this court that such railroad ought to be constructed, confirmed by the court, may be taken in lieu of the consent of the property owners. The petitioner is a corporation organized pursuant to the act known as the rapid transit act, and that act contains the same requirement. (Const., art. 3, § 18; Laws 1875, chap. 606.) This is an application by the corporation to confirm a determination of the commissioners that the railroad which it proposes to construct in streets in the city of Brooklyn, and to operate by steam power, ought to be constructed and operated, notwithstanding the requisite consent of property owners has not been obtained, and the corporation has made no provision for compensating such owners as may sustain damages by reason of the construction and operation of such railroad.

It has been decided by the court of last resort (*Matter of Kings County Elevated Railway*, 82 N. Y., 95) that this court has the power, and that it is our duty to review the report of the commissioners upon the facts, and after a consideration of all the circumstances to determine the question whether private rights and interests should be yielded for the sake of the public good. That being so, I have no hesitation in declaring my opinion that no man's property should be taken for, or injuriously affected by, the construction or operation of an elevated railroad, except upon the condition that compensation for all damages sustained by him thereby should be made. Ample protection against direct invasions of the rights of private property is afforded by the fundamental law. It cannot be taken for public use without compensation. But property which merely abuts upon the street, and which the corporation does not "take" in a technical sense, may be injuriously affected by the railroad. The exclusion of light — the diffusion of offensive odors, smoke and steam, the disturbance caused by the rattling of the cars and the obstruction of the atmosphere tend to impair the value of property. The fact is indisputable that in many instances elevated railroads operated by steam power have injured property which has not been taken or in any manner appropriated by the corporation that owns them. The evidence before us shows that similar consequences will follow the construction and operation of the petitioners' proposed railroad. The injustice of treating such

injuries as undeserving of compensation is perfectly apparent; nor can any amount of public benefit be deemed a just compensation therefor. And yet it is still a mooted question whether the owners of property injuriously affected, but not actually taken by the railroad corporation, are protected by the constitutional provision referred to. That question should be set at rest before railroad corporations are permitted to inflict further injuries upon private property. Their right to construct elevated railroads in streets should be made dependent upon their providing a suitable and sufficient indemnity to abutting owners against any damages which they may sustain thereby, or if that may justly be deemed too onerous, then provision should be made by law for such indemnity in some other mode.

Until such indemnity in a suitable form shall have been provided the report ought not to be confirmed.

DYKMAN, J.:

It is in the fundamental law of this State that no law shall authorize the construction or operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained, or in case the consent of such property owners cannot be first obtained, the General Term of the Supreme Court in the district in which it is proposed to be constructed may, upon application, appoint three commissioners, who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination confirmed by the court may be taken in lieu of the consent of the property owners. This constitutional restriction was respected in the rapid transit act of 1875, and the last part of section 3 of that law was made in conformity thereto.

This corporation was organized under these provisions, and is now in full subjection to their entire scope and limitation, and so it has been conducted thus far.

The first commission contemplated has been appointed, and by it a route has been fixed and determined for a road. The effort to

procure the consent of the requisite number of owners of property bounded on the streets on which it was proposed to construct and operate the road resulted in failure.

Thereupon there was appointed by the General Term of the Supreme Court three commissioners to determine whether the road ought to be constructed and operated, and they have made report to the court in favor of construction. Yet, to stand in place of consent of the property holders, their determination must be confirmed by the court. Such confirmation is now sought by the corporation and resisted by the owners, and the power to be exerted by the court is not a mere formal function. It has jurisdiction, power and duty to review the whole case, examine all the facts and determine in the exercise of sound judicial discretion whether they are sufficient to warrant the determination of the commissioners. (*Matter of Kings Co. Elev. Ry. Co.*, 82 N. Y., 95.)

Plain it is that new functions have been added to the court to determine when in sound policy the objections of property owners should be overridden, and that in taking this power from the legislature and grafting it on the judicial system, the intent was to secure more effectually private property against corporate encroachment.

The wisdom of this provision in thus placing a power of partial repression in the property owners is well illustrated by this case. The Constitution, without discrimination against the lack of technical title to the centre of city streets, recognizes the rights of abutting owners and places in their hands a partial veto power. That power has been exerted, and the reason put forward in justification of the veto is the great and irreparable injury and damage which must result to private property by the construction of this road.

This introduces to consideration the question of compensation, and being in, it takes place in the front rank of importance.

In the present state of the law, compensation is at least uncertain, and it is not just to throw any doubts into the balance against the owners of abutting property. The construction of this railroad would cause a sacrifice of private property, and the most ardent advocate of the exercise of the right of eminent domain, under which private property is appropriated, would never claim that it could or should be used to wrest private property from its owners where there may be no compensation. Public good alone is to be

weighed against individual injury. The construction of a railway without compensation is confiscation of private property, and to outweigh that there must be some great public necessity.

That has not been shown in this case. There may be and doubtless is a necessity for some means of rapid transit in Brooklyn, but there is at least equal necessity for protection to private rights and private property, and when the constitution has placed in the hands of property owners a weapon for their defense against corporations, of which they cannot be disarmed even by the legislature, the courts will not take it from them and deliver them over to their enemies without the clearest necessity. The great corporations, including the elevated railroads, have already sufficient power and control without assistance from the courts to tighten or extend their grasp. They have been favored by the legislature with franchises and privileges until they have colossal proportions, and are carried on for the aggrandisement of the favored few in much disregard of individual and private rights, and at the great expense of the many, but we may at least hope that the day is not nigh when they can buy out the law or shove by justice.

If the necessity for rapid transit in Brooklyn be as great as this corporation claims, it will remunerate an outlay for the depreciation to private property to result from its realization, and its future may with safety be left to the operation of commercial laws.

No further elaboration of this subject will be attempted here, and this opinion is against confirmation of this report on the following grounds :

*First.* That compensation is not assured.

*Second.* That construction of an elevated railroad on city streets, without compensation, is confiscation.

*Third.* There is not disclosed a public necessity sufficient to justify the court in permitting the erection of this railroad against the dissent and opposition of more than one-half of the owners of property along its line.

The motion to confirm should be denied.

Motion to confirm report of commissioners denied.